IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARCY D. BELL, | ) |
| Plaintiff, | ) |
| v. | ) No. 12 C 7058 |
| KANE COUNTY JAIL, et al., | ) Judge Virginia M. Kendall |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

On November 23, 2011, Plaintiff Darcy Bell, an inmate in the Kane County Jail, failed to comply with corrections officers' orders and officers wrestled him into a restraint chair and sprayed him with pepper spray. They also placed a spit shield over his face. Bell subsequently suffered asthma attacks and was left in that chair for approximately 10 hours. The two remaining defendants are Officer Campbell and Sergeant Ducay, who were involved in forcing Bell into the restraint chair. Bell filed a two count Complaint alleging violations of his Eighth Amendment rights for excessive use of force and deliberate indifference to a serious medical condition. Campbell and Ducay each filed motions for summary judgment, claiming that there are no genuine issues of material facts for either count and that they are entitled to qualified immunity. (Dkt. Nos. 81, 84.) For the reasons stated below, the Court denies their motions for summary judgment on Counts One and Two and holds that they are not entitled to qualified immunity.

1

## BACKGROUND

The Court takes the following facts from the parties' Local Rule 56.1 statements and exhibits. The facts are undisputed unless expressly noted.

Bell was an inmate in the Kane County Jail from November 3, 2011 to July 10, 2012. (Pl. Resp. C. ¶4; Pl. Resp. D. ¶4.)[1] He suffers from asthma. (Def. Resp. C. ¶110; Def. Resp. D. ¶106.) During the relevant time period, Ducay served as a Sergeant of the Housing Unit Dayshift and Campbell was a corrections officer in the Jail. (Pl. Resp. C ¶2; Pl. Resp. D. ¶2.) Jail policy dictates that inmates are assigned a colored status: green, yellow, or red, which corresponds to his or her level of privileges. (Pl. Resp. C. ¶8; Pl. Resp. D. ¶9.) On November 23, 2011, the Jail's policy required the removal of mattresses from inmates on red status during daytime hours and mattresses were to be returned in the evening. (Pl. Resp. C. ¶9; Pl. Resp. D. 10.) That day, Bell was on red status. (Pl. Resp. C. ¶10; Pl. Resp. ¶11.)

At around 7 a.m. on November 23, 2011, Ducay and Campbell reported to Bell's cell in response to a report that Bell was not complying with orders. (Pl. Resp. C. ¶ 7; Pl. Resp. D. ¶8.) When they entered Bell's cell, Ducay and Campbell observed that Bell was alone and wearing a towel over his face because he knew that he could be sprayed with Oleoresin Capsicum spray (commonly called pepper spray). (Pl. Resp. C. ¶¶11-12; Pl. Resp. D. ¶14.) Ducay saw that Bell was holding a pencil and the parties dispute whether Bell was also holding his property bag. (Pl. Resp. D. ¶14.) Ducay learned from Campbell and other corrections officers that Bell had been ordered to give up the mattress and Bell had been initially resistant to complying. (Pl. Resp. C ¶13; Pl. Resp. D. ¶12.) Bell dropped the pencil as ordered. (Pl. Resp. D. ¶15.) Ducay asked

---

[1] For the purposes of this Order, citation to "Pl. Resp. C." denotes Bell's counterstatement of facts to Campbell's statement of the facts and "Pl. Resp. D." denotes Bell's counterstatement of facts to Ducay's statement of facts. "Def. C. 56.1 St." refers to Campbell's statement of the facts and "Def. D. 56.1 St." to Ducay's statement of the facts. "Def. C. Resp." denotes Campbell's response to Bell's counterstatement of the facts and "Def. D. Resp." Ducay's response to Bell's counterstatement of the facts.

Bell to cuff up and when Bell resisted, Ducay warned him that he would be sprayed with O.C. spray. (Pl. Resp. C. ¶15.) Bell placed his hands through the feed slot in the cell door and officers handcuffed him. (Pl. Resp. C. ¶16; Pl. Resp. D. ¶20.) Campbell along with Officers Holloway and Jackson escorted Bell out of his cell. (Pl. Resp. C. ¶18; Pl. Resp. D. ¶20.)

Ducay ordered that Bell be placed in a restraint chair, although the parties dispute whether Bell was noncompliant up to this point. (Pl. Resp. C. ¶17; Pl. Resp. D. ¶21.) Bell did not want to go into the restraint chair and began resisting. (Pl. Resp. C. ¶¶18, 20; Pl. Resp. D. ¶24.) Campbell, Ducay, and the other officers forced Bell into the restraint chair, at which time Campbell was on top of Bell and Bell struck him in the torso. (Pl. Resp. C. ¶22.) The parties dispute whether Campbell fell on top of Bell to keep him from striking others. (Pl. Resp. C. ¶23.) The parties additionally dispute whether Bell threw elbow and knee strikes before he was in the chair, was grasping something above his head, defending himself in response to the officers' actions, and if his hands were going toward an officer's face. (Pl. Resp. C ¶21; Pl. Resp. D. ¶¶24-26.) Based on Ducay's order, Officer Robinson used O.C. spray to subdue Bell; the parties dispute whether O.C. spray was necessary to subdue Bell. (Pl. Resp. C. ¶25; Pl. Resp. D. ¶27.) After Robinson sprayed Bell, the officers secured Bell in the restraint chair. (Pl. Resp. C ¶28; Pl. Resp. ¶29.) Bell asked for an inhaler, but the parties disagree about whether he asked for it multiple times. (Def. C. Resp. ¶92; Def. D. Resp. ¶88.) While the officers tried to secure him and after he was secured in the restraint chair, Bell threatened the officers with violence. (Pl. Resp. C. ¶29; Pl. Resp. D. ¶28.) Robinson placed a spit shield on Bell's face according to Ducay's order. (Pl. Resp. C. ¶30; Pl. Resp. ¶30.) A spit shield allows air to come in and out and traps spit projected by the person wearing it. (Pl. Resp. D. ¶31.) Ducay claims that after Bell

was secured in the restraint chair he saw a pencil between Bell's legs, but Bell argues that he dropped all items including the pencil before exiting his cell. (Def. D. 56.1 ¶34; Pl. Resp. ¶34.)

Ducay then called medical personnel to the scene to tend to Bell. (Pl. Resp. C. ¶31; Pl. Resp. D. ¶35.) Bell spoke with the medical personnel while in the restraint chair. (Pl. Resp. C. ¶35; Pl. Resp. ¶39.) An officer stated "inhaler" while medical staff was present. (Def. C. Resp. ¶93; Def. D. Resp. ¶89.) The officers placed Bell in the restraint chair in his cell. (Pl. Resp. C. ¶37; Pl. Resp. D. ¶41.) Officer Bommelman videotaped the officers' interaction with Bell up to this point. (Pl. Resp. C. ¶14; Pl. Resp. D. ¶16.) Campbell and Ducay had no further interactions with Bell that day. (Pl. Resp. C. ¶45; Pl. Resp. D. ¶44.) The parties dispute whether the O.C. spray was removed from Bell's face by towels five minutes after he was placed back in his cell and also whether it was removed at all. (Pl. Resp. C. ¶¶38-39; Pl. Resp. ¶¶42-43.) Campbell and Ducay have no medical training, but the parties dispute whether they knew that Bell had asthma. (Pl. Resp. C. ¶¶69-70; Pl. Resp. D. ¶¶64-65.) They disagree about whether Ducay knew that Bell had requested his inhaler during the altercation. (Pl. Resp. D. at ¶66.) The parties further dispute whether Campbell and Ducay observed that Bell was having difficulty breathing or an asthma attack. (Pl. Resp. C. ¶71; Pl. Resp. D. a¶67.) Bell had previously had an asthma attack while at the Jail, but the parties disagree as to whether corrections officers or medical staff had provided him an inhaler during his asthmas attacks before. (Pl. Resp. C. ¶72; Pl. Resp. D. ¶68.) In his prior asthma attacks, Bell claims that he could only talk in short spans while Campbell and Ducay assert that he could not yell or talk. (Pl. Resp. C. ¶73; Pl. Resp. D. ¶69.) Bell was criminally charged and convicted for battering Campbell and assaulting Ducay during the November 23, 2011 altercation. (Pl. Resp. C. ¶64; Pl. Resp. D. ¶62.)

Campbell and Ducay contend that Jackson checked on Bell at approximately 8:20 a.m. and observed that he was not having any medical issues. (Def. C. 56.1 St. ¶48; Def. D. 56.1 St. ¶47.) They also claim that at 9:33 a.m., Jackson put Bell back in the restraint chair after Bell had unsecured the restraints. (Def. C. 56.1 St. ¶49; Def. D. 56.1 St. ¶48.) Each corrections officer in the Jail has a chip that they carry on a fob, which the officers call a "pipe." (Pl. Resp. C. ¶46; Pl. Resp. D. ¶45.) When an officer places the pipe on an area of the door an electronic record of when the officer entered the door and which officer entered is created. *Id.* If an officer does not connect his personal chip to his pipe, the pipe records will reflect that someone entered the cell but will not state who. (Pl. Resp. C. ¶47; Pl. Resp. D. ¶46.) According to Campbell and Ducay, the pipe record indicates that Officer Mann checked Bell's cell at 7:12 a.m., 7:24 a.m., 7:37 a.m., 8:04 a.m., 8:19 a.m., 8:29 a.m., 8:56 a.m., 9:08 a.m., 9:21 a.m., 9:34 a.m., and 9:51 a.m. (Def. C. 56.1 St. ¶51; Def. D. 56.1 ¶49.) At approximately 9:54 a.m. Bell was moved to another cell. (Pl. Resp. C. ¶52; Pl. Resp. D. ¶50.) Campbell and Ducay claim that the pipe record reports that Officer Mann check Bell in the second cell at 9:49 a.m. (Def. C. 56.1 St. ¶53; Def. D. 56.1 St. ¶51.) Bell was subsequently moved again to a cell in the Intake/Release area. (Pl. Resp. C. ¶52; Pl. Resp. D. ¶50.) Campbell and Ducay cite to the pipe records in asserting that an unknown officer checked the cell in the Intake/Release area where Bell was located at 10:50 a.m., 11:19 a.m., 11:47 a.m., 12:15 a.m., 12:43 a.m.,[2] 1:12 p.m., 1:40 p.m., 2:08 p.m., 2:36 p.m., 3:05 p.m., 3:33 p.m., 4:01 p.m., 4:27 p.m., 5:03 p.m., 5:31 p.m., 5:59 p.m., 6:28 p.m., 6:56 p.m., 7:24 p.m., 7:51 p.m., 8:20 p.m., 8:48 p.m., and 9:16 p.m. (Def. C. 56.1 St. ¶57; Def. D. 56.1 St. ¶55.)

At approximately 5:15 p.m., Sergeants Aguirre, Huston, and Montavon removed Bell from the restraint chair. (Pl. Resp. C. ¶58; Pl. Resp. D. ¶56.) At that time, Bell was no longer a

---

[2] The times "12:15 a.m." and 12:43 a.m." are quoted from the Defendants' statements of the facts, but the Court notes that there was likely a clerical error and the Defendants intended to state "12:15 p.m." and "12:43 p.m."

safety threat. (Pl. Resp. C. ¶62; Pl. Resp. D. ¶58.) The parties dispute whether Aguirre had reason to contact the medical department when he removed Bell from the restraint chair. (Pl. Resp. D. ¶63; Pl. Resp. D. ¶59.) According to medical records, medical staff checked Bell while he was in the restraint chair at 7:00 a.m., 8:30 a.m., 9:30 a.m., 10:30 a.m., 11:30 a.m., 1:05 p.m., 2:05 p.m., 3:10 p.m., 4:10 p.m., and 5:00 p.m. (Def. C. 56.1 St. ¶61; Def. D. 56.1 St. ¶61.)

## **LEGAL STANDARD**

Summary judgment is appropriate where the admissible evidence shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enters., Inc.,* 753 F.3d 676, 681 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "A 'genuine issue' exists with respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bunn,* 753 F.3d at 681–82 (citing *Anderson,* 477 U.S. at 248). On the other hand, "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the nonmoving party, there is nothing for a jury to do." *Bunn,* 753 F.3d at 682 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (emphasis in original)). In determining whether a genuine issue of material fact exists, the Court construes the evidence and all inferences that reasonably can be drawn in the light most favorable to the nonmoving party. *See Bunn,* 753 F.3d at 682 (citing *Anderson,* 477 U.S. at 255); *see also Kvapil v. Chippewa County, Wis.,* 752 F.3d 708, 712 (7th Cir. 2014).

## DISCUSSION

I.  **Excessive Use of Force**

Count One of the Complaint seeks relief under 42 U.S.C. § 1983 for excessive force amounting to cruel and unusual punishment.[3] (Dkt. No. 72 at 1.) Campbell and Ducay argue that they are entitled to summary judgment on Count One because Bell is unable to establish that they acted maliciously and sadistically and not in good faith. Bell counters that Campbell and Ducay's states of mind cannot be determined as a matter of law because that analysis entails a fact-intensive inquiry that is not appropriate for summary judgment. Bell further points to the several orders given to Bell before he was secured in the restraint chair that the parties agree he complied with which belie the need to use force.

"[T]he unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In analyzing whether an inmate's Eighth Amendment rights have been violated, the first step is to determine if the force applied rose above the de minimis level. *See Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). When prison authorities use force to subdue a disturbance and the force is more than de minimis, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Whitley*, 475 U.S. at 320-21). "In making that determination, several factors are relevant,

---

[3] The Complaint does not cite to the violation of a specific constitutional amendment. It alleges that the force used by the Defendants was "cruel and unusual," which is a direct quote from the Eighth Amendment. *See* U.S. CONST. amend. VIII. Moreover, in his response to the Defendants' motions for summary judgment, Bell states that his "claims arise under the Eighth Amendment." (Pl. Resp. C. at n.2.; Pl. Resp. D at n.2.) The Court therefore construes Count One to allege a violation of Bell's Eighth Amendment right to not endure cruel and unusual punishment. *See Gibbons v. Higgins*, No. 94-2636, 1995 WL 761743 at *6 (7th Cir. 1995) (construing an inmate's complaint for excessive force used by a prison guard that did not specifically refer to the Eighth Amendment as an Eighth Amendment claim).

including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (citing *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999)). "When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). The Court denies a defendant's motion for summary judgment when the prisoner presents "evidence that will support a reliable inference of wantonness in the infliction of pain." *Fillmore*, 358 F.3d at 504 (quoting *Whitley*, 475 U.S. at 322).

In their motions for summary judgment, Campbell and Ducay do not address whether the force used to secure Bell in the restraint chair and the use of the O.C. spray s force such that they could have violated Bell's Eighth Amendment rights. Instead, they discuss whether they acted in good faith and were not malicious or sadistic. The Court thus will only consider if there is a genuine issue of material fact about whether Campbell and Ducay behaved maliciously and sadistically when using force and O.C. spray to secure Bell in the restraint chair.

The parties agree that when Campbell and Ducay arrived at Bell's cell, Bell did not comply with orders to forfeit his mattress and cuff up. They acknowledge that Bell complied with orders to drop the pencil and eventually acquiesced to cuffing up. But there are genuine issues regarding material facts leading up to the use of force and O.C. spray. Specifically, they debate whether Campbell and Ducay needed to apply force when Bell resisted the restraint chair because Bell had demonstrated a pattern of failing to comply with orders up to that point. They

disagree as to whether Campbell fell on Bell unintentionally and then stayed on him to prevent Bell from striking others, or if Campbell attacked Bell and punched him while on top of him. Campbell and Ducay claim that they reasonably perceived that Bell was a threat, while Bell asserts that he had been compliant and unthreatening prior to the use of force. Furthermore, Campbell and Ducay propound that it was necessary to spray Bell with O.C. spray in order to subdue him and allow the officers to put the restraints on him. Bell, on the other hand, argues that use of the O.C. spray was malicious and sadistic because he was already subdued when an officer sprayed him. These issues constitute material facts because they are the factors that the factfinder must consider when determining whether Campbell and Ducay acted with maliciously and sadistically so as to violate Bell's Eighth Amendment rights. *See Fillmore*, 358 F.3d at 504.

The Court cannot hold as a matter of law that Campbell and Ducay acted in good faith and not maliciously or wantonly. *See Hudson*, 503 U.S. at 5. If the Court accepts Bell's version of events and draws all reasonable inferences in his favor as it must at this stage, he has raised genuine issues of material facts regarding Campbell and Ducay's states of mind when they forced Bell into the restraint chair and when Ducay ordered another officer to spray him with O.C. spray. These issues are appropriate for a jury and cannot be resolved at the summary judgment phase. Accordingly, the Court denies Campbell and Ducay's motions for summary judgment on Count One. *See Lewis v. Downey*, 581 F.3d 467, 477-78 (7th Cir. 2009) (reversing district court's grant of summary judgment on Eighth Amendment claim because there was a genuine issue of material fact about the defendant's state of mind).

## II. Deliberate Indifference

Count Two alleges that Ducay and Campbell were deliberately indifferent to Bell's serious medical condition when they denied him medical treatment. Bell claims that he suffered

9

from serious medical conditions due to the injuries he sustained when he forcibly secured in the restraint chair, the O.C. spray that was left on his face, and the multiple asthma attacks he suffered while in the restraint chair with the spit shield and O.C. spray on his face. Campbell and Ducay move for summary judgment on Count Two on the basis that Bell did not have a serious medical need. They additionally argue that they were not deliberately indifferent because they did not know that Bell had asthma and they left after Bell was secured in the restraint chair. Campbell and Ducay argue that the Jail also was not deliberately indifferent to Bell's medical needs because officers and medical staff regularly check on him while he was in the restraint chair. In response, Bell asserts that there is a genuine dispute of material fact about whether Bell suffered a serious medical condition and whether Campbell and Ducay were deliberately indifferent to it. He refers to the parties' dispute over whether Campbell and Ducay heard Bell request an inhaler and complain about injuries to his face after the altercation and while they were present. With respect to the serious medical condition requirement, Bell posits that the parties' disagreement about whether the asthma attacks suffered by Bell constitute a serious medication demonstrates that judgment as a matter of law is improper.

In order to prove that the defendant violated an inmate's Eighth Amendment rights by failing to treat a medical condition, the inmate must show "that he had a serious medical need and that a defendant was deliberately indifferent to it." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). "[A]sthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005). A prison official is deliberately indifferent to an inmate's serious medical need when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "But an official's failure to alleviate a significant risk that he should have perceived but did not" is not deliberate indifference. *Id.* at 838.

Beginning with the serious medical condition requirement, to survive a motion for summary judgment Bell must establish that a genuine dispute exists as to whether he suffered a medical condition that was objectively serious. Both sides rely on *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007) in support of its position about the seriousness of Bell's asthma after he was secured in the restraint chair. In *Williams*, the defendant asked the plaintiff to take a breathalyzer test at a traffic stop and the plaintiff said that he needed medication and could not breathe. 509 F.3d at 402. The Seventh Circuit held that the plaintiff's asthma was not a serious medical condition in that context because his statements in response to a request to take a breathalyzer test are "insufficient by themselves to show that Williams was suffering from a serious asthma attack." *Id.* In addition, the Court relied on the facts that the plaintiff never asked for his inhaler again and did not exhibit any symptoms of an asthma attack. *See id.* In this case, it is undisputed that Bell has asthma and that during the incident officers used force to secure Bell in the restraint chair when he resisted, sprayed him with O.C. spray, and placed a spit shield over his face. Furthermore, the parties agree that Bell said "inhaler" at least once after he was restrained and Bell had experienced asthmas attacks before while housed in the Jail. Based on these undisputed material facts, this case differs significantly from *Williams* such that the Court is unable to conclude as a matter of law that Bell's asthma attacks were not a serious medical condition after the incident. The physical altercation with the officers, the O.C. spray on Bell's face, and the spit shield covering Bell's face heighten the seriousness of Bell's asthma attack because these factors could impact Bell's breathing in contrast to the plaintiff in *Williams*

who had engaged in no physical activity, had not been sprayed with O.C. spray, and had no spit shield on his face. Moreover, the parties disagree about whether Bell repeatedly requested an inhaler, which under *Williams* is a material fact because it should be considered when determining the severity of an asthma attack. *See id.* (holding that the plaintiff's one request for an inhaler lessened the severity of his asthma attack). Accordingly, summary judgment on whether Bell's asthma attacks were a serious medical a condition is inappropriate.

Holding as a matter of law that Campbell and Ducay did not act with deliberate indifference toward Bell's medical condition is also improper because there are genuine issues of material facts. The parties debate whether Campbell and Ducay knew that Bell had asthma and saw that Bell was struggling to breathe and having an asthma attack. They additionally disagree about whether Ducay heard Bell ask for an inhaler. During past asthma attacks in the Jail, Campbell and Ducay claim that Bell could not talk or yell but Bell purports to have been capable of talking only in short spans during prior attacks. They agree that Bell was talking during the altercation and afterwards in the presence of Campbell and Ducay, which could impact their perception of Bell's potential medical needs depending on whether Bell could talk during previous attacks. Campbell and Ducay argue that in the past medical staff provided Bell with his inhaler meanwhile Bell asserts that corrections officers had not given him his inhaler. With respect to the O.C. spray on Bell's face, which could have exasperated his asthma, Bell points to the conflicting testimony by Campbell and Ducay as creating a genuine issue because Campbell states that Bell was decontaminated five minutes after he was secured in the chair and Ducay said that Bell was decontaminated two and a half hours later. These facts are material because they illuminate whether Campbell and Ducay knew that Bell was having an asthma attack yet disregarded his requests for an inhaler and did not decontaminate him, which could constitute

deliberate indifference. A reasonable jury could conclude based on the evidence that Campbell and Ducay were deliberately indifferent, and therefore there is a genuine dispute about these material facts.

Lastly, Campbell and Ducay's argument that the regular checks of Bell while he was in the restraint chair by Jail staff demonstrates a lack of deliberate indifference does not go to a material fact because Count Two accuses only Campbell and Ducay of deliberate indifference, not medical staff or the Jail or any officers that allegedly checked on Bell. The Court thus denies Campbell and Ducay's motions for summary judgment on Count Two because Bell has adequately established questions of fact for resolution by a jury.

### III. Qualified Immunity

Finally, Campbell and Ducay argue that the Court should grant their motions for summary judgment because they are entitled to qualified immunity. They claim that because Bell cannot establish that they violated his constitutional rights, qualified immunity applies. Bell responds that summary judgment is inappropriate because there are genuine issues of material fact as to whether Campbell and Ducay violated his constitutional rights. A government official is protected by qualified immunity when viewing the facts in the light most favorable to the plaintiff her conduct violated a constitutional right of the plaintiff and the constitutional right violated was clearly established at the time of the alleged violation. *See Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005). The official is entitled to qualified immunity "unless the Court affirmatively answers *both* questions." *Id.* As explained in Sections I and III *supra*, there are genuine issues of material facts that preclude the Court from holding as a matter of law that Campbell and Ducay did not violate Bell's Eighth Amendment rights. Looking at the undisputed facts in the light most favorable to Bell, a reasonable jury could find that Campbell and Ducay

13

deprived him of his constitutional rights by acting maliciously and sadistically in using excessive force. They could also reasonably conclude that Bell's asthma attacks were a serious medical condition and Campbell and Ducay were deliberately indifference to it by failing to provide him his inhaler. Additionally, Campbell and Ducay do not contest that the standard for liability under the Eighth Amendment for refusal to treat a serious medical condition or excessive use of force was clearly established in November 2011. In any event, it was clearly established at the time of the altercation that the Eighth Amendment prohibits excessive use of force and deliberate indifference to a serious medical condition such as an asthma attack. *See, e.g., Cooper v. Dart*, Case No. 10-cv-04119, 2014 WL 3864068 at *5 (N.D. Ill. Aug. 6, 2014) (defendants not entitled to qualified immunity for deliberate indifference claim because Eighth Amendment right was clearly established in December 2009 and a factual question remained); *Childress v. Mosher*, No. 02 C 50211, 2003 WL 22956398 at *2 (N.D. Ill. Dec. 12, 2003) (no qualified immunity because force used by defendants clearly violated Eighth Amendment). In sum, the Court finds that Campbell and Ducay are not entitled to qualified immunity.

## CONCLUSION

For the reasons explained therein, the Court denies Campbell and Ducay's motions for summary judgment and holds that they are not entitled to qualified immunity. (Dkt. Nos. 81, 84.)

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 2/12/2016